NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANDREA B., | ) | |
| | ) | Supreme Court No. S-16081 |
| Appellant, | ) | |
| | ) | Superior Court Nos. 1JU-12-00071 CN |
| v. | ) | and 1JU-14-00002 CN |
| | ) | |
| STATE OF ALASKA, DEPARTMENT | ) | |
| OF HEALTH & SOCIAL SERVICES, | ) | MEMORANDUM OPINION |
| OFFICE OF CHILDREN'S SERVICES, | ) | AND JUDGMENT[*] |
| | ) | |
| Appellee. | ) | No. 1579 – April 13, 2016 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Philip M. Pallenberg, Judge.

Appearances: Megan Webb, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Laura Fox, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Stowers, Chief Justice, Fabe, Winfree, Maassen, and Bolger, Justices.

I.    INTRODUCTION

A mother challenges the trial court's decision terminating her parental rights to two children. Because the court's relevant finding is not clearly erroneous and

---

[*]    Entered under Alaska Appellate Rule 214.

the court correctly applied relevant law, we affirm the termination of the mother's parental rights.

## II.    BACKGROUND

Andrea B.[1] had, relevant to this appeal, two children falling within the definition of an "Indian child"[2] under the federal Indian Child Welfare Act of 1978 (ICWA).[3]  The State of Alaska, Department of Health and Social Services, Office of Children's Services (OCS) petitioned in January 2014 to terminate Andrea's parental rights.

The standards for terminating parental rights are provided in Alaska Child in Need of Aid Rule 18; it is governed primarily by Alaska Statutes and also by ICWA requirements in the case of an Indian child.[4]  After completion of a trial, the court found

---

[1]    Pseudonyms are used for family members.

[2]    *See* 25 U.S.C. § 1903(4) (2012).

[3]    25 U.S.C. §§ 1901–63. ICWA establishes "minimum Federal standards for the removal of Indian children from their families and [for] the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture."  25 U.S.C. § 1902.

[4]    CINA Rule 18(c) (referencing requirements in AS 47.10.011, 47.10.080, and 47.10.086 and providing, in the case of Indian children, protocols that comport with ICWA, 25 U.S.C. § 1912(d) and (f)).

Under Alaska CINA Rule 18(c) parental rights to an Indian child may be terminated at trial only if OCS makes certain showings:

OCS must show by clear and convincing evidence that:  (1) the child has been subjected to conduct or conditions enumerated in AS 47.10.011 (relating to abuse, neglect, mental illness, and other harmful conditions); (2) the parent has not remedied the conduct or conditions that place the child at substantial risk of harm or has failed within a reasonable time to remedy the conduct or conditions so that the child would be at substantial risk of physical or mental injury if returned to the parent; and (3) active

(continued...)

that OCS had met its burden of proof for the termination of Andrea's parental rights. Andrea appeals only one of the findings underlying the termination of her parental rights: the finding that OCS made active efforts to provide remedial services and rehabilitation programs designed to prevent the breakup of the family.

## III. STANDARD OF REVIEW

"[W]hether OCS has made active efforts as required by ICWA is a mixed question of law and fact; [we] review[] the questions of law de novo."[5] "In CINA cases, we review the superior court's factual findings for clear error."[6] "Findings are clearly erroneous if, after reviewing the record in the light most favorable to the prevailing party, we are left with a 'definite and firm conviction that a mistake has been made.' "[7]

---

[4]  (...continued)
efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family;

OCS must show beyond a reasonable doubt, including qualified expert testimony, that continued custody of the child by the parent is likely to result in serious emotional or physical damage to the child; and

OCS must show by a preponderance of the evidence that the child's best interests would be served by termination of parental rights.

[5]  *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011) (citing *Ben M. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 204 P.3d 1013, 1018 (Alaska 2009)).

[6]  *Id.* at 1103 (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

[7]  *Maisy W.*, 175 P.3d at 1267 (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

"When reviewing factual findings . . . we ordinarily will not overturn a trial court's finding based on conflicting evidence,"[8] and "[w]e will not reweigh the evidence when the record provides clear support for the trial court's ruling."[9] "[I]t is the function of the trial court, not of this court, to judge witnesses' credibility and to weigh conflicting evidence."[10]

## IV.    DISCUSSION

"Before terminating parental rights to an Indian child, the trial court must find by clear and convincing evidence that OCS made active, but unsuccessful, efforts to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family."[11] "Our concern is not with whether the State's efforts were ideal, but with whether they crossed the threshold between passive and active efforts."[12] "[A]ctive efforts require taking a parent through the steps of a [case] plan and helping the parent develop the resources to succeed; drawing up a case plan and leaving the

---

[8]    *Martin N. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 79 P.3d 50, 53 (Alaska 2003) (citing *In re Friedman*, 23 P.3d 620, 625 (Alaska 2001)).

[9]    *D.M. v. State, Div. of Family & Youth Servs.*, 995 P.2d 205, 214 (Alaska 2000) (citing *A.M. v. State*, 891 P.2d 815, 825 (Alaska 1995)).

[10]    *In re Adoption of A.F.M.*, 15 P.3d 258, 262 (Alaska 2001) (quoting *Knutson v. Knutson*, 973 P.2d 596, 599-600 (Alaska 1999)).

[11]    *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 432 (Alaska 2015) (first citing 25 U.S.C. § 1912(d); then citing CINA Rule 18(c)(2)).

[12]    *Pravat P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 249 P.3d 264, 272 (Alaska 2011) (citing *Dale H. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 235 P.3d 203, 213 (Alaska 2010)).

client to satisfy it are merely passive efforts."[13] Active efforts must promote reunification and target "the particular family needs that caused the child to be in need of aid."[14] Here the trial court found the children to be in need of aid under AS 47.10.011(9) (neglect) and (11) (mental illness).

"Whether OCS made active efforts is determined on a case-by-case basis."[15] "In determining whether OCS made active efforts, the trial court may consider all services provided during the family's involvement with OCS" instead of focusing on a "distinct period of time."[16]

Andrea asserts that OCS failed to meet the active efforts requirement because it did not teach her parenting skills during visits with her children. Andrea argues that she could not develop the parenting skills she needed before reunification could take place because OCS did not provide her the on-the-spot instruction she required due to her learning deficits. Initially OCS workers tried to coach Andrea during visits, but those efforts ceased because of Andrea's negative reactions. Instead Andrea's caseworkers most often provided parent coaching either before or after visits.

---

[13]     *Jon S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 212 P.3d 756, 763 (Alaska 2009) (citing *A.A. v. State, Dep't of Family & Youth Servs.*, 982 P.2d 256, 261 (Alaska 1999)).

[14]     *Kyle S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 1262, 1269 (Alaska 2013) (citing *Burke P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 162 P.3d 1239, 1245 (Alaska 2007)).

[15]     *Lucy J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 244 P.3d 1099, 1114 (Alaska 2010) (citing *Wilson W. v. State, Office of Children's Servs.*, 185 P.3d 94, 101 (Alaska 2008)).

[16]     *Sylvia L. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 343 P.3d 425, 432 (Alaska 2015) (citing *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1268-69 (Alaska 2008)).

The record shows that OCS's coaching method was an active effort to establish a working relationship with Andrea. When OCS made suggestions to Andrea during visits — as she now argues OCS should have — she reacted negatively and refused to listen, upsetting the children. The trial court found that Andrea was generally "resistant to any instruction to remedy her behaviors," did "not believe she ha[d] any issues," and demonstrated "no ability to change" during OCS's involvement. To better serve Andrea, OCS consulted with various sources about the best approaches to communicate with her, coached service providers about how to best approach her, and stopped coaching Andrea during visits when she became disruptive and refused further instruction. The trial court correctly found OCS's actions were active efforts because, among other things, OCS changed its methods to establish a working relationship with Andrea, demonstrating that OCS was actively trying to teach Andrea the skills she needed for reunification.[17]

Andrea also argues the record does not support the trial court's findings that OCS offered her certain services specified in the trial court's order. This contention, even if correct, does not invalidate the trial court's ultimate active efforts finding — the record amply supports that finding. The trial court recognized that "[g]reat pains [were] taken to understand and work with [Andrea's] deficits" and reunify Andrea with her children. The court noted, and the record supports, that OCS made numerous efforts, including: (1) developing multiple case plans, adapting them to Andrea's needs, and providing multiple caseworkers as she moved around Southeast Alaska; (2) referring Andrea to mental health and substance abuse assessments and counselors; (3) placing Andrea's children with people who could appropriately model parenting skills and whom

---

[17] *See Chloe W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 336 P.3d 1258, 1269 (Alaska 2014) (noting "efforts to develop a working relationship with [the parent] to help her succeed in parenting" were active efforts).

Andrea trusted; (4) referring Andrea to services that would help her learn to parent her children in light of their developmental difficulties and attempting to bring those services into supervised visitations; (5) arranging a flexible visitation schedule, with activities on weekends and outside of scheduled visitation, and transporting Andrea if needed; (6) changing communication methods when Andrea initially resisted parent coaching; and (7) maintaining near daily contact with Andrea through text messages and speaking with her anytime she visited OCS's facilities.

The record indicates that OCS made very active efforts to promote the family's reunification despite Andrea's continued refusal to acknowledge her parenting issues or to cooperate with OCS. Accordingly we conclude that the trial court did not err in determining that OCS made the required, but unsuccessful, active efforts to prevent the breakup of this Indian family.

## V. CONCLUSION

We AFFIRM the termination of Andrea's parental rights.